# UNITED STATES DISTRICT COURT

for the

District of Guam

FILED

DISTRICT COURT OF GUAM

SEP 27 2019

JEANNE G. QUINATA
CLERK OF COURT

Case No.    cv-**19-00140**

*(to be filled in by the Clerk's Office)*

Felder, Dominick Lamar

*Plaintiff(s)*

-v-

Samantha Brennan, Director, Department of
Corrections Guam - Individual and Official Capacity

Allen P. Borja, Warden, Department of Corrections
Guam - Individual and Official Capacity

Mae M. Quitugua, Corrections Officer, Department of
Corrections Guam - Individual and Official Capacity

Antone F. Aguon, Corrections Officer, Department of
Corrections Guam - Individual and Official Capacity

Cathy M. Cruz, Corrections Officer, Department of
Corrections Guam - Individual and Official Capacity

Marceline U. Maratita, Corrections Officer,
Department of Corrections Guam - Individual and
Official Capacity

*Defendant(s)*

)
)
)
)
)
)
)
)
)
)
)
)
)
)

## COMPLAINT FOR A CIVIL CASE

ORIGINAL

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Plantiff, Felder Dominick , is and was at all times mentioned herein a prisoner of the Territory of the United States Guam in the custody of the Government of Guam, Guam Department of Corrections. He is currently confined in the Guam Department of Corrections Mangilao Facility.

> Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Dominick Lamar Felder |
| Street Address | 101Mashburn Lane |
| City and County | Mangilao Guam |
| State and Zip Code | 96913 |
| Telephone Number | N/A |
| E-mail Address | N/A |

### B. The Defendant(s)

Defendant No. 1

Defendant Brennan Samantha is the Director the Territory of Guam Department of Corrections. She is legally responsible for the overall operation of the Department and each institution under its jurisdiction, including Guam Department of Corrections.

| | |
|---|---|
| Name | Samantha Brennan  - Individual and  Official Capacity |
| Job or Title *(if known)* | Director, Department of Corrections Guam |
| Street Address | 101 Mashburn Lane |
| City and County | Mangilao Guam |
| State and Zip Code | 96913 |
| Telephone Number | 671734-3981 |
| E-mail Address *(if known)* | |

Defendant No. 2

Defendant Borja, Allen P. is the Warden of Guam Adult Correctional Facility, Department of Corrections Guam. He is legally responsible for the operation of Guam's Adult Correctional Facility and for the welfare of all inmates within that prison.

| | |
|---|---|
| Name | Allen P. Borja  Individual and  Official Capacity |
| Job or Title *(if known)* | Warden, Department of Corrections Guam |
| Street Address | 101 Mashburn Lane |

1

| City and County | Mangilao Guam |
| State and Zip Code | 96913 |
| Telephone Number | 6717343981 |
| E-mail Address *(if known)* | |

**Defendant No. 3**

Defendant, Quitugua, Mae M. is a Correction Officer of the Guam Department of Corrections who, at all times mentioned in this complaint held the rank of Major and was assigned to Guam Adult Correctional Facility, Department of Corrections Guam

| Name | Mae M. Quitugua - Individual and Official Capacity |
| Job or Title *(if known)* | Corrections Officer, Department of Corrections Guam |
| Street Address | 101 Mashburn Lane |
| City and County | Mangilao Guam |
| State and Zip Code | 96913 |
| Telephone Number | 6717343981 |
| E-mail Address *(if known)* | |

**Defendant No. 4**

Defendant, Aguon, Antone F. is a correctional officer of the Guam Department of Corrections. Who at all times mentioned in this complaint, held the rank of Major and was assigned to Guam Adult Correctional Facility, Department of Corrections Guam.

| Name | Antone F. Aguon - Individual and Official Capacity |
| Job or Title *(if known)* | Corrections Officer , Department of Corrections Guam |
| Street Address | 101 Mashburn Lane |
| City and County | Mangilao Guam |
| State and Zip Code | 96913 |
| Telephone Number | 6717343981 |
| E-mail Address *(if known)* | |

**Defendant No. 5**

| Name | Cathy M. Cruz - Individual and Official Capacity |
| Job or Title *(if known)* | Corrections Officer , Department of Corrections Guam |
| Street Address | 101 Mashburn Lane |
| City and County | Mangilao Guam |
| State and Zip Code | 96913 |

2

|                           |                                                           |
|---------------------------|-----------------------------------------------------------|
| Telephone Number          | 6717343981                                                |
| E-mail Address *(if known)* |                                                         |

**Defendant No. 6**

|                              |                                                            |
|------------------------------|------------------------------------------------------------|
| Name                         | Maratita Marceline U. - Individual and Official Capacity   |
| Job or Title *(if known)*    | Corrections Officer , Department of Corrections Guam       |
| Street Address               | 101 Mashburn Lane                                          |
| City and County              | Mangilao Guam                                              |
| State and Zip Code           | 96913                                                      |
| Telephone Number             | 6717343981                                                 |
| E-mail Address *(if known)*  |                                                            |

## III.   Statement of Claim

### Facts

On 4/4/2019 I was told by visitation officer Mesa who was the Department of Corrections visitation officer on the floor that he was instructed by his supervisors that I was no longer allowed to have my hair braided as a religious practice. I am a African American Muslim man who has been actively practicing my faith before incarceration and throughout my 11 years at the Department of Corrections Guam.

For 11 years Since Feb 12, 2008 (prior to 4/4/2019) and before incarcertaion I have been having my hair braided by my wife as a religious practice guided by Muslim Hadiths and practices passed to me through a lifetime of worship and expression of faith.

Beginning April 4, 2019 through April 23, 2019 The Department of Corrections Guam prohibited me under threat of punishment from having my hair braided as a religious activity. An activity I was observing in prison for 11 years prior to April 4, 2019.

On April 23, I was issued a memorandum for compliance stating that I could have my hair braided but could no longer have my wife who was and remains my soul means for accomplishing this religious activity. The department has effectively blocked me from conducting this religious activity without providing any compelling interest, without providing the least restrictive means or providing any alternative to reestablish this practice which they've abruptly stopped.

Since April 4, 2019 the Department of Corrections Guam has placed a substantial burden on practicing my religious activity of having my hair braided by stripping me of my ability , means , and / or source to have my hair braided and not providing any means to reestablish this practice.

My mother taught my wife how to braid my hair. Previous to my wife braiding my hair either my mother or sister would help care for my hair. As a muslim man the practice of having my hair braided should be performed by a woman known to me either close family member or spouse.

I've outlined references in **Attachment A** which describes my journey as Muslim man specifically regarding the

braiding of hair. The process of caring and braiding hair as a Muslim believer is sacred to my faith.

A Hadith is defined as a collection of traditions containing sayings of the prophet Muhammad which, with accounts of his daily practice (the Sunna), constitute the major source of guidance for Muslims apart from the Koran.

The following along with many other writings provide guidance on why and how I should practice this observation

> Zaad al-Ma'aad (1/170)
>
> When his hair grew long because of travel or other reasons, the Prophet (blessings and peace of Allah be upon him) would put it into four braids, which was in accordance with the custom of the Arabs. So he would put his hair back, then make it into strands and twist them together, then they would become four braids.
>
> Another narration in the collection of al-Bukhari occurs in a chapter specifically entitled "Braids".
>
> It recounts the narration of Ibn 'Abbas; in his childhood, the Prophet (peace be upon him) once moved him during prayer by pulling at the two braids in his hair. Ibn Hajr comments that, "in this act, there is indeed a tacit approval by the Prophet's (peace be upon him) for the making of braids." Ibn Abbas was a young boy, and not in a state of travel at the time. [Ibn Hajr, Fath al-Bari]

Braided hair has been a sacred practice of mine since a young adult. It is sacred to me because it allows me to the very few opportunities to worship Allah in my physical and spiritual being. In addition, the process of my wife braiding my hair is considered one of the ways I'm able to honor the practice. As the prophet as repeatedly stated that those who have hair should honor it, and those entrusted with his hair were only his trusted companions.

However, the defendants listed in this complaint are preventing me from observing this religious practice under RLUIPA because they stopped me from practicing this religious activity since April 2019, continue to block my only means (wife) I have available to carry out this process, and without providing the least restrictive means of doing so.

Prior to this event I was allowed to have this practice observed during visitation with my wife who simply braided my hair which traditionally occupied only 30 mins of time during a 2 hour allotted visitation period. We have never caused any harm or problems during visitation with regard to my practice of braiding hair.

However, this religious activity was stripped from me without true cause despite my consistent request for remedy and exhaustion of the remedy process. The administration claims that they are not preventing me from having my hair braided but will not allow my wife to fulfill this practice. I've sought relief, and provided four available options including

1) Continuing to allow my wife to braid my hair during visitation
2) Take away one of my 3 visitation days so that my wife can do my hair
3) My family pays for someone to come inside
4) That the department provide a licensed barber
5) Allow my wife to teach me how to do it so that I can continue this practice

All these options were denied and I never received a response back. Nor will they provide any other remedy or

4

accommodation to get this done.

To be clear I have never asked the Department of Corrections Guam to provide any monetary assistance to me on my religious journey. They have never provided prayer beads, a prayer rug, a Quran, or even a decent place for me to pray. They have not accommodated me during Ramadan. As the one year Depcor attempted to assist their idea of help was to reduce the numbers of meals I received to only 2 a day. My meals were either thrown away, did not have enough nutritional calories and food. I suffered immensely because of the Department of Corrections and actions of the guards as well.

During this time at least 2 months prior to Ramadan I requested that the Department allow my family to donate meals to sustain me during this time as to not place any financial burden on the department and to help facilitate the process. The department refused to allow my family to do this for Ramadan.

The Department of Corrections Guam repeatedly makes it nearly impossible for me to receive the support I need to practice my faith and constantly hinder me from receiving donations or religious supplies. Yet they make no attempt to provide these supplies on their end.

When I went through the long process of trying to request a prayer rug I was met with immense blowback. My family had to have a rug special ordered because they would not accept and standard prayer rug dimension. The bigotry displayed was apparent in Major Quitugua's comment to my wife stating that technically they only have to allow the minimum requirements and that a bath towel satisfies this requirement.

Other correctional BOP institutions allow it for their Muslim population but DOC has failed to provide even basic services.

For 11 years in the Department of Corrections prison I've vehemently observed my faith. Even if it means performing Salah next to my commode during prayer time, in the open cube where others are making noise and eating, in the rec area where people are exercising, and I'm even told to pray in the communal restroom while others are showering. This is what I was instructed to do by the administration as I am not allowed to conduct prayers to Allah in the existing prison Chapel. Salah is Muslim prayers, performed five times each day by Muslims. It is the second Pillar of Islam. God ordered Muslims to pray at five set times of day.

That being said I've followed the remedy process consistently while constantly being blocked and twarted by Guam's Prison Administration to simply practice my Muslim faith. However, this recent blocking of observing my faith by simply allowing me a valid method for having my hair braided was met with no internal relief and it resulted in threat of life as well as threats to revoke my visitation, to cut my hair, and to make it harder for my family to see me or spend time with me.

To be clear I'm filing this complaint against all included defendants under

> 42USC2000cc CHAPTER 21C--PROTECTION OF RELIGIOUS EXERCISE IN LAND USE AND BY INSTITUTIONALIZED PERSONS. Wherein the defendants have unreasonably chosen to unlawfully prevent me from practicing my religious activity of having my hair braided and effectively cutting me off from my sole source of help and not providing any means to re-establish this practice which prior to 4/4/2019 has been practiced by myself and my wife in prison for the past 11 years without any harm or issue to other inmates, detainees, or visitors.

> The RLUIPA goes on to state that,

> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the

government demonstrates that imposition of the burden on that person, assembly, or institution—

(A) is in furtherance of a compelling governmental interest; and

(B) is the least restrictive means of furthering that compelling governmental interest.

The Department has yet to provide me with a compelling government interest they consistently reference sanitation which is again a bigoted , discriminatory perview as their is nothing unclear about clean hair. The reference respecting the rights of others but have yet to identify how braiding my hair disrespects the rights of others. They say it's improper but do not say how. All of these are subjective reasoning that does not follow a strict scrutiny analysis. They are large based on ethnocentric and paramilitary concepts.

Again my hair braids have never harmed anyone during visitation. I've always submit to searches or inspections and have not been identified as one the smuggles contraband into prison. Yet, the Department of Corrections officials have targeted me and my family during visitation. Upon information and belief I was told by officers that I was placed on a close watch list during visitation, unlike other families, my wife and I are often assigned seating so that we can be watched closely while. This is clearly discriminatory and has been the essence of this constant struggle to receive equitable treatment under the law.

I'm providing you all this background so that you understand in brevity only some of the struggles myself and my family have had to face as a result of being a devout Muslim in Guam's Department of Correction.

To understand the timeline even further and events that have taken place let me walk you through each step I took as an attempt to seek assistance from those included in this complaint. I followed the Administrative Remedy and Complaints procedure outlined in 24 GAR Peneology and Corrections Article 16 Administrative Remedy and Complaints.

24 GAR Article 16 provides a method for administrative remedies and complaints for prisoners, prison administrators, and the courts. I'm including the procedures below for your reference

§16101. General Provisions
    §16102. Grievance Complaint Form
    §16103. Referral Outside the Division
    §15104. Referral to Agencies or Officials other than Departmental
    §16101. General Provisions. (a) Most complaints can be resolved quickly
    and efficiently through direct contact with the staff members who are
    responsible in the particular area of the problem. This is the preferred course of
    action. Staff member awareness of the importance of prompt attention and
    response to these routine requests will minimize the use of formal complaint
    procedures.
    (b) A viable complaint procedure will serve the inmates, the staff
    members, and the courts. It will provide the inmate with a systematic
    procedure whereby issues raised relating to confinement will receive attention
    and a written response within a short period of time from the appropriate
    authority, if appealed.
    (c) Such a procedure assists the administration by providing an additional
    vehicle for internal solution of problems at the level having most direct contact
    with the inmate. It also provides a means for continuous review of
    administrative decisions and policies. Further, it provides a written record in
    the event of subsequent judicial or administrative review. A viable
    administrative remedy procedure should reduce the volume of suits filed in

court and should develop a record of facts which will enable the courts to make more speedy dispositions.

§16102. Grievance Complaint Form. (a) If an inmate cannot resolve a complaint through the informal contact with staff members, and wishes to file a formal complaint for administrative remedy, the inmate should secure a copy of the Grievance Complaint Form and write the complaint in the space provided. The inmate may secure assistance from staff members or other inmates to complete the form. The inmate should then give the completed form to a staff member designated by the Director, retaining a copy for the inmate's own record.

(b) The complaint must be filed with the Department within fourteen (14) calendar days from the date on which the basis of the complaint occurred. Department staff members have up to seven (7) days from receipt of the complaint, excluding weekends and holidays, to act upon the matter and provide a written response to the inmate. When the complaint is of an emergency nature and threatens the inmate's immediate health or welfare, a reply must be made as soon as possible, normally within twenty-four (24) hours from the receipt of the complaint.

(c) When the proper course of action is determined, the response should be completed and signed by the staff member designated by the Director for the given sequential step. The original shall be placed in the inmate's jacket, one (1) copy should go to the inmate, and one (1) copy should go to the applicable facility administrator. Responses should be based upon facts which pertain specifically to the issue and should deal only with the issue raised, and should not include extraneous material.

(d) The complaint and grievance procedure shall follow in sequential steps as follows:

(1) STEP 1: Inmate to middle management/section supervisor, parole officer or assigned caseworker.

(2) STEP 2: Inmate to Prison Security Administrator.

§16103. Referral Outside the Division. In the event that a complaint or grievance is not resolved at the section/division level, it shall be referred to the Director for action if so initiated by the inmate. The decision of the Director shall be final.

§16104. Referral to Agencies or Officials Other than Departmental. An inmate should first exhaust the administrative channels in this Chapter in the quest of a resolution of the complaint or grievance before referring it to the Suruhanu or other authorized officials. Inmates are advised that courts frequently require evidence that administrative remedies have been exhausted before granting relief through such means as habeas corpus.

The department does not have a religious handbook or an established process to deal with religious accommodations.Note that although I myself followed the requirements outlined in 24 GAR Article 16 those included in the complaint did not.

For example, I submitted a remedy to Major Antone Aguon on 5/13/2019 I did not receive a response back until 6/12/2019 this was 22 days (not including weekends).

In addition to this, after not receiving assistance from Major Aguon or Major Quitugua I sent multiple remedies to the Warden Allen P. Borja and Director Samantha Brennan. I sent at least 3 remedies to the Director's office which

were never returned. I did not receive these remedy requests back as they were not responded to or returned to me. I have requested that the Warden return the grievance filed against him but have yet to receive it back as of the filing of this complaint. It was not until I filed a grievance on June 30, 2019 to both the Warden and Director that I received a response from the Director Dated July 12, 2019 but received on July 13, 2019 more than 10 days after the remedy request was filed, stating that she concurs with the Warden, along with the Director's response, a response was also attached with the warden's answer stating that everything has already been explained to me.

Now that you understand the brief history of why I'm filing this complaint let me further specify the action I have taken as well as the responses and stopping of religious activities, blocking of my only means to accomplish this activity, and the consistent lack of accommodation received by those mentioned in this complaint.

On 4/4/2019 I was told by visitation officer Mesa the visitation officer on the floor at the time that he was instructed by his supervisors that I was no longer allowed to have my hair braided as a religious practice. I am an African American Muslim man who has been actively practicing my faith before incarceration and throughout my 11 years at the Department of Corrections Guam. From this point all defendants mentioned herein forced me to choose between practicing my religion and being punished (including being written up for disciplinary reasons, thrown in the SHU / Post 6, have my visitation terminated, and my family barred from seeing me.) or not practicing my religion and being safe from their threats.

Immediately after returning from visitation I sent remedy requests to the Visitation Processing Center as Major Quitugua was overseeing this department at the time. I also contacted my caseworker Mark Perez on 4/8/2019 in an attempt to resolve this issue internally. A couple days later on 4/10/2019 my wife at the request of my caseworker sent over guidance included in this complaint as Attachment A(1) . A copy of the physical email to Caseworker Perez is also included as Attachment A(2).

On 4/15/2019 I sent an Inmate request from to Major Aguon hereafter referred to as Attachment B, detailing that I'm seeking assistance as a result of the stoppage of the religious practice of braiding my hair reinforcing that as a devout Muslim the RLUIPA warrants that accomodations should be made. I also provided guidance on why this is a religious practice for me including citing the Hadith entitled Braids.

Note: All other remedies not specifically addressed in the timeline will be included as attachment C as they will provide background into the efforts made and full scope of the remedy process.

4/30/2019 I received a memorandum from Major Aguon Dated 4/23/2019 herein referred to as Attachment D stating that I was authorized to grow my hair. But unable to have my hair braided during visitation.

Firstly, with regard to this response I was not requesting assistance regarding the length of my hair as it had already been established through legal precedent that I was allowed to maintain the length of my hair because of my religion. Major Aguon stated that I could braid my hair but did not give me an option to actually do it as my wife had been doing it during visitation for the past 10 years. Instead, his memorandum stated that I was allowed to have my hair braided but not by my wife during visitation.

To be clear I am only one of 2 African American people in my unit. The rest of the population is either Chamoru, Micronesian, or Philipinno. There is also no one else who is Muslim or able to braid hair as I have personally asked. The Department has no internal barber or barber services available. This is why my wife was previously the one braiding my hair under Warden Crisostomo's administration.

I submitted a response to Major Aguon clarifying that the RLUIPA required that the department provide the least restrictive means for religious accommodation and since the department irrationally stopped me from having this done during visitation I requested an alternative means to re-establish this religious practice.

In Major Aguon's memorandum Attachment D the Major stated,

> "You are advised that visitation is a time of visit and not grooming. Therefore the restriction of braiding your hair during visitation will continue to be enforced. All prisoners are advised to be properly dressed and groomed prior to visitation."

Firstly, I want to point out that according to the 24 GAR Article 9

> While visiting is a privilege, inmates are encouraged to maintain close contact with family members and those who can assist in the rehabilitation process.

More importantly 24 GAR §1302 states,

> YOU HAVE THE RIGHT to freedom of religious affiliation and voluntary religious worship.

With regard to the Major's comment about visitation being a time of visit not grooming I'd like to reiterate that based on the prison's policies, as in,

> 24 GAR §10101. Inmate's Responsibility for Personal Hygiene. Inmates shall keep themselves clean and practice those health habits essential to the maintenance of physical and mental well-being

> 24 GAR §10103. Showers. Inmates shall shower daily in accordance with unit schedules.

> 24 GAR §10104. Hair Care. (a) Male inmates may have their hair cut as often as is practicable or necessary, and/or where directed by the Director. Hair shall be worn in a neat manner, and be clean, and well groomed. If facial appearance is substantially changed, new pictures shall be required.

> 24 GAR §10105. Grooming Routines. Inmates shall normally be permitted to shave daily.

I am always compliant with hygiene and grooming routines. As mentioned above, my wife always provides hair care products which I use daily and I never arrive to visitation unkept. My hair is always washed, cleaned, and combed. In addition to this I am always dressed appropriately per prison standards.

Again based on the regulations provided for visitation "inmates are encouraged to maintain close contact with family members and those who can assist in the rehabilitation process."

The religious practice of braiding my hair during visitation was an accommodation provided by Warden Crisostomo as it was the least restrictive means of accommodating my practice. Again, it's not an unreasonable request to have my hair braided as there are many other requests afforded to other inmates to satisfy their religious observations. Some examples of theses accommodations made for other religious followers include:

-CCD
-Jehovah's witness worship
-Jehovah's witness bible study and celebrations
-Christian worship and celebrations
- Food, Instruments, and Family members.
- All allowed during visitation days and hours

Moreover, that which these administrators fail to understand is that this is not a visitation issue. This is a religious accommodation issue. Later in this complaint I will reference another attachment which provides a very detailed explanation of this as well as my request to provide accommodation whether it be during or outside of visitation

hours.

on 4/30/2019 I sent an inmate request form to Major Aguon hereafter referred to as Attachment (E1) indicating that I have not received responses from the Warden and Major Quitugua surpassing the 10 day period for decisions to be made or remedied. I also elaborated that I still have not been provided accommodation to have my hair braided and that this practice of denying me access to due process as well as religious accommodation was causing a substantial burden on me. I also indicated that I would continue to follow the process outlined by EO-94-19 / 24 GAR Peneology and Corrections.

on 4/30/2019 I sent an inmate request form to Major Quitugua indicating that I have not received a response from her surpassing the 10 day allotted period to remedy my concerns. Referred to as Attachment E(2) I explained to her that I believe my right to religious freedom have been violated specifically under RLUIPA. I also explained to her that while they themselves were not compliant with the department's procedural due process I would continue to follow the process outlined.

on 4/30/2019 I filed a grievance against the 1) Platoon or Operations Commander hereafter referred to as Attachment F(1) to ensure I was compliant with the procedure outlined in EO-94-19 / 24 GAR Peneology and Corrections.

on 5/7/2019 still not receiving a response from Major Quitugua I followed up via inmate request form to Major Quitugua, hereafter referred to as Attachment (G). The followup via inmate request form stated that the memorandum (Attachment D) did not provide a means to reestablish my religious practice. Stating that I have a means to have my hair braided (e.g. my wife as done for the past 11 years). However, they are denying that means and no other reasonable option has been provided.

Undated Response - Lower portion attachment (G) was provided by Major Quitugua in her response stated that my wife was not allowed to braid my hair as it was unsanitary and improper. She went on to state that this was done" absent of the standard of practice in other places".

That being said the Major should have understood that Guam's population is dramatically different from other prisons in the mainland or abroad. These prisons with large Muslim populations allow for much more than I am requesting.

For example, the United Nations Office on Drugs and Crimes provided documentation THE RELIGIOUS RIGHTS AND DUTIES OF MUSLIM INMATES IN PRISONS A GUIDE FOR CRIMINAL JUSTICE PERSONNEL wherein the documentation details the rights of Muslims including

- Muslims have the right to be alone with their wife or husband in a private room
- Every Muslim (male and female) has to fast the month of Ramadan every year.
- Every Muslim is required to pray five times each day

Amongst other things Sing Sing Prison for example allows for a Muslim Ramadan Donation for Charity as well as Muslim programs and meals.

Another example, Washington state prison are required to provide nighttime meals during Ramadan for Musim Prisoners.

Many other institutions have standards practices, and activities that support the rights of Muslims and Muslim religious activities.

I am asking for this specific accommodation because the population is not the same as other prisons. Therefore, I

do not have the same support or assistance or access to others in my Islamic culture within my actual unit.

On 5/7/2019 I sent Major Aguon a follow up request detailing that I have not been provided a resolution

On 5/12/2019 I received a memorandum for Major Aguon reaffirming his previous memorandum. Hereafter referred to as attachment (H) He went on to further state that the Department was not violating my rights and that no matter how many remedies I write my wife would not be allowed to braid my hair during visitation.

That being said I continued to request for assistance from his office but was also receiving blocks from officer Francisco the unit officer on detail from reaching out to the major. Major Aguon was finite in his decision in that my wife would not be allowed to braid my hair "no matter how many remedies" I sent to him. Still yet, he did not provide an alternate solution as I explained to him that my wife was my means for practicing this activity and asked that he provide an alternate option.

The defendants promulgate the the reasons associated with denying my right to practice my religion is a result of the sanitary practices and that that practice is not respectful to others.

Reference memorandum written by M.M. Quitugua - Administrative Remedies 5/23/2019  *(C1)*
Here are the issues associated with these points

1. The religious right to braid my hair is in fact being denied as the observation is 2 pronged 1) That the practice be observed or conducted by someone known to me like a family member or wife. Even if I was to sacrifice the sacred tenet of having my wife braid my hair there is no barber or person available within my unit who is familiar with braiding african american hair. Therefore, the right to have my hair braided is in effect being denied because they are not providing me with a feasible option to get it done.

   I've asked that they provide a viable option 1) a barber 2) my wife 3) anything but they continue to refuse I've asked that they take one of my visitation days and use that time to have my wife do it. Because the question here is not can I have my hair braided during visitation if this cannot take place during visitation that's fine with me. I'm just asking for a viable method to get it done.

   Over the past upon information and belief I've witnessed other visitors and their families provided different accommodations during visitation for different reasons. Some accommodations allowed inmates and their familiar to sit in a different area for example patients suffering from AIDS or inmates that needed to be separated from other inmates during visitation. Or family members being transported to the visitation area as opposed to walking.

   There are many different accommodations that have been made for others, but the defendants, on the grounds of a sincerely held religious belief refuse to make any accommodations, that would restore completely the violation they themselves cause, for no reason or explanation as I've continued to ask without relief.

2. The defendants also go on to state that it hinders a clean and sanitized visitation area. To insinuate the practice of braiding my hair for religious reasons is unsanitary. In point of fact my hair is washed with specialized products which can be verified with visitation log as they have a log of all my years keeping my own hygienic hair clean. The unit officers on duty can also verify that I follow hygiene regulations and always come to visitation groomed and clean.

   To insinuate that my hair being braided is unsanitary is absurd. As DOC's own visitation area is in itself a cesspool of uncleanliness from mold in the walls which smell permeates when it rains to mildew at the

entrance and on doors. To ants crawling on the walls and tabletops and in vending machine food products and many times inoperable bathrooms that violate OSHA requirements as well as faucets that are so rusted that water can barely exit the spout, leaking and rotting walls, flooding floors during rainy season.

The rationale that my hair makes DOC visitation unsanitary is preposterous.

Aside from this thought process the fact is I was only having my hair done by my wife during visitation for the past decade because the previous Warden - Warden Crisostomo who spent time serving in prisons in the mainland understood that this was a valid and meaningful religious practice. Since there is no major African american population at DOC he authorized that practice as DOC did not have any real means to accomodate me and did not see it as harmful nor has it ever caused any harm in the past.
On top of this if defendants truly do not intend to violate my religious rights they would take notice that I am not asking them to authorize the practice during visitation I have been asking them to provide an accommodation to have my hair braided by my wife. Whether it's during visitation , on a separate day, in a separate area , done by a barber which my family will pay for , or any alternative to actually allow me to have this done. This is not a visitation issue this is a religious accommodation issue. Specifically with regard to establishing the least restrictive means as RLUIPA pesecribes.

If religious community volunteers are allowed to come into the facility and conduct religious services like Church, or host events with instruments , bibles, food, and other accommodations like classes and spiritual sessions for Christian or Catholic religions why then is my wife not allowed to volunteer to braid my hair with her two hands as a religious observation. There is clearly descrimination here as I'm not even allowed a monecre of the same options.

As a matter of fact, I'm not even allowed to receive a black fist comb because prison officials like Cathy M. Cruz who is listed as a defendant believe it to be an object that spews hate or is gang related. The black fist is a symbol or black (African American) pride and yet it is not allowed because they believe it spews hate. The Black fist comb is a common symbol of African American pride akin to the Senahi or Guam seal. My wife's intention for bringing the comb in during incoming drop off has nothing to do with hate or gang relation it was simply available at the stores as it is a common item. But C.M. Cruz's racial bias took it as a gang related symbol.

When I've asked repeatedly to use the Chapel to pray I'm told that I'm not allowed to pray there. I've asked to even conduct my daily prayers outside in the rec area I'm also told that I"m not allowed as it's not authorized. Instead, while Christians and Catholics are allowed an actual chapel I was told by Major Quitugua that I can pray in my cell next to my commode, or in the open bay surrounded by 23 other inmates while watching television and the radio on.

I find that disgraceful but continue daily to fall to my knees and perform Salah to god as I understand my religious journey may not always been an easy one. This is why the braiding of hair is so sacred because when the prophet was traveling or on a journey he would traditionally have his hair braided as a symbol of care but also a symbol or journeying so that we may still remain faithful in how we present ourselves even during such a difficult time.

I understand that I am in Guam and in prison but I am still a man. I deserve the same privileges afforded to other religions and I'm coming to you to find relief as I've tried for over a decade to help these prison officials understand why it's not their place to stop someone from practicing their belief.

This specific denial is targeted solely at me. It does not say that people who stand in a circle during visitation to hold hands and pray together cannot do so. It says that I am black african american muslim cannot have his hair braided because the practice is unclean and does not respect others.

I'm still at awe as how this disrespects others. I don't have my wife singing Al humduallah (which means Praise be to Allah) while braiding my hair. I don't rant Muslim verses or try to convice others they should be muslim. I"m simply having my hair braided.

The defendants themselves do not provide an 'actual' valid prison interest. They don't mention safety or security because they know I am always willing to be searched and probed if it's a requirement.

Instead they reference sanitation and the practice itself being improper. There's no other explanation that can be provided except racial and religious descrimination. At minimum it's more than fair to state that as a Muslim prisoner I am being targeted and treated unequally under RLUIPA.

To be clear I'm not asking for a fancier place to perform Salah. I'm simply asking that if others can be afforded the right to observe their religious practices even during visitation should I not be afforded the same or similar accommodation ? Furthermore, if having my hair braided during visitation is such an outlandish and obscene observation, even if my wife is simply touching my CLEAN hair with her hands, then should there not be an actual 'valid' accommodation which allows me to effectively practice. I have even requested to give up a visitation day, in order to practice / perform this observance but again I was not even given the consideration and was again totally denied and cut off from any means of accomplishing my religious activity.

For instance, when a Catholic requests spiritual counseling do these prison administrators respond by stating, "Yes, you can receive spiritual counseling but visitation is not a time for it, you can do spiritual counseling in the unit".

Does this response now not seem absurd?

If the prisoner's response is but sir, "I don't know how to be a spiritual counselor and know one else in the unit can do this."

Should then Major Agoun's response be, "No matter how many times you send me a remedy no one outside the unit will be allowed to provide you spiritual counseling."

What rational person would state that the catholic practitioner was being accommodated with the least restrictive means.

This is exactly what those defendants mentioned in this complaint are doing to me. I've repeatedly requested an actual method to accomodate my religious practices and yet they continue to tell me I can do it on my own in a prison and unit that does not have people who can actually braid hair or are even Muslim.

At the end of July after receiving a denial from the Director Samantha Brennan Warden and Colonel Borja, hereafter referred to as attachment (I). To be clear I never actually received a response returned back from the Warden. Instead the director returned her response to my grievance in June 12, 2019 stating that she concurred with the Warden.

Immediately after receipt I was taken by officer Flores who had me handcuffed and taken from my unit and escorted by officer Flores to the office area. There the Warden was waiting for me with Officer Maratita who is included , in this complaint because she watched this incident take place, and concurred

with the Warden's depraved indifference that she would execute his demands. She also did nothing to correct the Warden's depraved indifference and negligent actions against me.

In the Administrative Office the Warden was waiting for me at a table and told me that I could not grievance the director. I began to speak but he immediately shouted and told me to shut up. He continued by saying that I better stop what I'm doing or he's going to make life difficult for me.

That I should watch out or he's going to make me and my wife sit apart during visitation , remove all the couches , and cancel my visitation if I keep seeking a remedy, and threatened that he would have my hair cut. He told officer Maratita to make sure she makes what he said happen. She concurred by saying Yes, sir. He also told me he doesn't care that to take him to court and sue him if I wanted to.

The next day upon information and belief I was told by other inmates that the Warden spread the rumor to the lifers (people in prison serving a life sentence) that I was the reason they are removing couches from the visitation area. I know this to be true as there were only 4 people present when these threats were made. These people include:

- Myself
- Warden Borja
- Officer Maratita
- the escorting officer Flores

These lifers, inmates told me via kite (messages sent across the prison) that I needed to fix it or they will be consequences. This is meant to warn me that I did something the lifers considered worthy of being hurt or killed as having couches in the visitation area is a specific thing for people who are spending time with their family.

Upon information and belief the Warden I was told spread these rumors to make me stop sending requests for relief. He and his officers like Officer Maratita collaborated to put my life in danger. Until this day I am still being told by inmates that I need to fix the situation.

Upon information and belief I believe this issue may be under investigation however I have not been given any notice or information about his and officer Maratita's actions. Nor have I been interview by internal affairs.

Immediately after the Warden did this to me my wife called the Governor's Chief of Staff unsure about what to do next as the Warden and Director were intentionally and programatically putting my life in danger. These things may seem or appear small on the outside but on the inside things like this get you killed. I have a right to be afraid as I've been harmed in this prison before by guards who tased me in 2013 and seen other inmates killed over much less.

And for the Director to direct the Warden to perform such an against against me is unlawful. These people are in positions of trust. Yet, they continue to showcase bigoted behavior. Unlike all the accomodations made for other religions I am consistently met with this type of ridiculous behavior. Threatening my life led me to believe that the director and Warden were not going to provide any avenue to assist me. But instead wanted to harm me unless I sit down and shut it.

The Warden himself should not have tried to threaten my life and coerce me with threat of punishment to stop seeking administrative relief. As indicated in 24 GAR § 16101 (b)

(b) A viable complaint procedure will serve the inmates, the staff
members, and the courts. It will provide the inmate with a systematic
procedure whereby issues raised relating to confinement will receive attention
and a written response within a short period of time from the appropriate
authority, if appealed.
(c) Such a procedure assists the administration by providing an additional
vehicle for internal solution of problems at the level having most direct contact
with the inmate. It also provides a means for continuous review of
administrative decisions and policies. Further, it provides a written record in
the event of subsequent judicial or administrative review. A viable
administrative remedy procedure should reduce the volume of suits filed in
court and should develop a record of facts which will enable the courts to make
more speedy dispositions.

I walk around in fear of what might happen because I have no idea what rumors he and his administrators
have decided to spread or what he has done to stop me from pursuing relief.

As a result of these events in the end of July I am filing this lawsuit, since I've been given no other avenue
to resolve this issue.

**Exhaustion of Legal Remedies**

Plaintiff Felder Dominick Lamar used the prisoner grievance procedure available at the Guam Adult Correctional
Facility Department of Corrections Guam to try and solve the problem.

Note the legal remedies protocol for seeking remedy or relief is outlined title 24 GAR Peneology and Corrections
Chapter 1 Article 16 Administrative Remedies and Grievances. You'll note that I followed the timeline outlined in
the code. However, in many cases the administration and defendants failed to meet their own deadlines and in
some cases did not even bother to respond to my request for relief. This complaint is a result of exhausting all
available remedies and a results of threats recieved and implemented by the Warden and officers within his
administration that I should stop this process else threat of life, revocation or visitation, and further punishment.

Below I've included a list of inmate remedy requests and grievances I sent to those mentioned in this claim in
hopes to resolve this internally. This list comes from the unit log book which requires that information sent out is
logged and confirmed by a unit officer on duty.

4/8/2019  Major Quitugua on Religious matter
4/11/2019  VPC  / Major Quitugua Request for Relief on Religious Matter
4/15/2019  Major Augon Inmate Request form sent
4/23/2019 Memorandum Major Aguon - Denial of Hair Braiding Accommodation for Religious Practice
4/30/2019 Major Quitugua Inmate Request form sent - Request for Religious Accommodation follow up based on
RLUIPA  no response received for request made of the 15th of April
5/7/2019 Response from Major Quitugua referencing braiding of hair for religious practice during visitation is a
hygiene and health issue
5/7/2019 - CSW Mark Perez Religious relief requested
5/7/2019 Major Aguon Religious relief requested
5/12/2019 Communication with CSW Mark Perez no remedy provided
5/13/2019 - Major Aguon religious relief requested no remedy provided
4/13/2019 - Ops Commander / Follow up on complaint Ast. Polify
5/23/2019 Memorandum Religious Right to braid hair reponse. Religious accommodation denied.
5/23/2019 Director sent Religious rights relief request

15

5/23/2019 Grievance - Religious Practice Violation
5/23/2019 Grievance - Request for relief
5/31/2019 Major Aguon religious relief sought no change
6/9/2019 CSW Mark Perez Religious assistance requested
6/11/2019 Major Aguon Grievance no responses for requests for relief made on 5/23 and 6/10
6/15/2019 Deputy Director Terlaje Religious relief requested  - no response
6/21/2019 Lt. Espino grievance submitted no response
6/21/2019 Follow up to Director Brennan sent regarding religious rights relief RLUIPA violations
6/26/2019 Grievance made as no response was received 6/30/2019 Director Memorandum Denial or relief
6/30/2019 Director Brennan Grievance sent no response returned
7/12/2019 Director Brennan Denial for religious practice relief
7/12/2019 Director Brennan complaint form returned answered by Warden on 7/1/2019

**Legal Claims**

These actions against me violate the Religious Land Use and Institutionalized Persons Act of 2000. The land use related provision of the RLUIPA prohibits state and local government from regulating land use in a matter that; discriminates against or among religious institutions. 42 USC 2000 cc(b); or imposes a substantial burden on religious exercise unless the regulation is the least restrictive means of serving a compelling government interest.

A  The Statute

Religious Land Use and Institutionalized Persons Act; Substantial Burden Provision
§2000cc. Protection of land use as religious exercise

(a) Substantial burdens

(1) General rule
No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution—

(A) is in furtherance of a compelling governmental interest; and

(B) is the least restrictive means of furthering that compelling governmental interest.

(2) Scope of application

This subsection applies in any case in which—

(A) the substantial burden is imposed in a program or activity that receives Federal financial assistance, even if the burden results from a rule of general applicability;

(B) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes, even if the burden results from a rule of general applicability; or

(C) the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved.

(b) Discrimination and exclusion
(1) Equal terms
No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.
(2) Nondiscrimination
No government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination.
(3) Exclusions and limits
No government shall impose or implement a land use regulation that—

(A) totally excludes religious assemblies from a jurisdiction; or (B) unreasonably limits religious assemblies, institutions, or structures within a jurisdiction.

B The Test -  The plaintiff must show that the land use regulation
1.  poses a substantial burden
2.  on "religious exercise'
3.  of a person, institution, or assembly

Religious Excercise - RLUIPA defines religious exercise broadly to include "Any exercise of religion, whether or not compelled by, or central to, a system of belief.

42 USC 2000cc - (5)(7)((A), (B) RLUIPA provides that religious exercise is construed broadly; to the maximum extent permitted by the terms of this chapter and the constitution. Under these constitutional protections Defendant Brennan violated my right to practice and observe my religious practices by ignoring my remedies and complaint for relief, and not answering my complaints or grievances.

The defendants listed herein have officially prohibited be from having my hair braided, they they cut me off from my only source / means or getting my hair breaded, they continue to refuse to provide any means or form of accommodation. Now they place a substantial burden on me to find a way to do this amongst all the other denials and lack of religious accommodation mentioned herein. There policies specifically target me and my Muslim faith.

When Samantha Brennan did answer my grevience she stated without discussion with me or need for further information that she agreed with Colonel Borja.

The Director refused to meet with me, discuss any potential alternatives, or even explain as to why she decided that she would not accommodate my religious practice. I've sent multiple remedies based on her only denial returned to me seeking assistance to resolve this matter internally. However, she has never responded.

Upon information and belief I believe the Director conspired with the Warden to stop me from sending more greviences and remedy requests.

By not discussing with me and choosing to concur with Warden Colonel Borja and denying my request as referenced in her memorandum dated July 12, 2019  which was in reference to DOC 2019-07-257

Defendant Borja violated my rights to practice my religious observation of having my hair braided by

1) Stopping the practice from continuing even after 11 years of observation
2) Ensuring the continual violation of the RLIUPA by not accommodating my requests to request accommodation
3) By threatening my life through the use of prison scare tactics, endangering my life by spreading rumors in the

prison population, and by threat of solitary confinement as punishment, and revocation of visitation if I continue to pursue accommodation.
4) By directing defendants Brennan, Aguon, Quitigua, Maratita, and Cruz to place this substantial burden on me without any offering any relief that would life the substantial burden.

As expressed in the timeline above Defendant Quitugua refused to provide any accommodation for having my hair braided although myself and my wife worked to provide Major Quitugua with information which explains my religious practice, and that I have been observing this practice for 11 years. Under the Major's command my religious practice was stopped. The Major refused to provide any reasonable means for me to conduct this practice or even address possible alternatives.

1) Stopping me from practicing my religious activity which I have been doing for 11 years of incarceration
2) Ensuring the continual violation of the RLIUPA by not accommodating or making any attempt to accommodate my religious activity. Not working with me to provide any alternative means since to practice this religious activity
3) Not responding to remedies and greviences for religious accommodation in a timely manner
4) Causing a substantial burden on myself and my family by stopping us from practicing this sacred activity together

As expressed in the timeline above Defendant Aguon refused to provide any accommodation for my religious activity. Although, I repeatedly sent him documentation and requests his final response to me was that no matter how many remedies I send him my wife would never be allowed to braid my hair during visitation. I consistently asked him to provide an accommodation if that was the case. But he refused to address me or make any effort to provide such accommodation.

1) Ensured and upheld via memorandum the continual violation of the RLIUPA by not accommodating or making any attempt to accommodate my religious activity. Not working with me to provide any alternative means since to practice this religious activity
3) Not responding to remedies and greviences for religious accommodation in a timely manner
4) Causing a substantial burden on myself and my family by stopping us from practicing this sacred activity together

Defendant Maratita violated my rights by being aware of the threat made against me by the Warden Allen P. Borja since she was the officer / commander present during this action. Officer Maratita although being aware of this legal action violated the color of law and did nothing to report this threat made against me.

Also by directing defendant C.M. Cruz to place substantial burden upon me by preventing and making it extremely difficult to practice my religious beliefs. Defendant Cruz implemented many of these activities which eventually led to the stopping of hair been braided. Cruz routinely instructed her officers on duty to stop my wife from braiding my hair. The extent of her actions went so far as to even while off duty officer C.M. Cruz would watch visitation floor's camera's via her mobile device to specifically target myself and my wife. As we were told upon information and belief that my wife and myself were on a specific watch list. My wife herself was never informed of this specific form of targeting , scare tactics, and attempt to entrap her even if she did nothing wrong.

After being tasered by DOC officers in 2013 I spent 2 years in the Hagatna Detention Facility for protective reasons. When brought back to the Mangilao facility C.M. Cruz was the head of the visitation office. C.M. Cruz fought me tooth and nail for every religious accommodation request. Although I had previously been authorized a kufi (head covering) and religious mat which took nearly 2 years for approval, I then I had to resubmit all religious remedies.

She consistently victimized me by imposing unnecessary religious burdens. Although I no longer have the

plethora of remedies sent to her the visitation processing center should have a copy of all these remedies for your observation.

C.M. Cruz was paramount in instigating events that would consistently deny my religious requests. Upon information and belief she was also the person at the visitation processing center fighting to stop me from having my hair braided.

After exhausting all procedural remedies outlined above I Plaintiff Felder have been provided no plain or adequate remedy to address the wrongs described herein. Both myself and my family have been irreparably injured by this clear discriminatory injustice.

While others are able to hold hands in prayer or stand in congreation together in a circle during visitation with their families and religious holidays I a black muslim american am not able to have my hair braided even when I've shown over the years that I'm miticulously devoted to my faith.

All my practices are devout I don't consume pork, to the point wherein I will miss meals and be hungry when DOC tries to feed me pork. For example, DOC staff will constantly ask me to eat a pork based hot dog. They will vehemently protest it is not pork. However, since I know the distinction I will not eat it. Then a few weeks later we learn it was actually pork and they were simply trying to trick me to consume the pork based item.

My family provides all my religious support , I never asked or imposed a burden on the department to assist me in anyway. I'm simply asking for the ability to practice my faith just as others are able to practice their faith in the prison.

These defendants named in this complaint have caused myself and my family great harm. They have burdened me substantially both spiritually, mentally, and physically. I consistently fallen into depression as a result of this process as it has taken a toll on me to constantly have to battle to practice my faith. I am currently being medicated heavily and find it difficult to deal with this burden they have imposed on me. In addition to this, again this seemingly small religious practice to the outside world the process of braiding my hair is very sacred to myself and my wife. Infact, I send my hair home to her through the incoming and outgoing process as it is a sign of blessing according to the haddiths.

Stopping my wife from braiding my hair has caused great pain in our marriage as it is one of the few religious activities we can celebrate together. Like praying before a meal.

I am really just at a loss and don't know what else I can do internally. This is why I am seeking your help.

---

IV.    Relief

Wherefore, plaintiff respectfully prays that his court enter judgement granting plaintiff:

A declaration that the acts and omissions described herein violated plaintiff's rights under the RLUIPA.

A premanent injuction to order all above mentioned defendants to stop brutalizing my faith and allowing me to have my hair braided by my wife or someone known to accommodate my religous observations as an African American Muslim man for the duration of my incarceration at the Department of Corrections Guam.

I am asking for an actual place to pray other than the communal bathroom, near my commode in my cell, or open cube. An actual place to pray akin to Chrisitian, Catholic, and Jehovah's Witness believers incarcerated within the department.

For the Department of Corrections Guam to stop all hindrance of practicing my faith including religious activities like Ramadan , Eid al-Fitr, Jumah, and Salah.

An order to ensure that officials do not retaliate against me for this action and to ensure my safety while incarcerated at the Department of Corrections Guam.

Removal of Both Director Samantha Brennan and Warden Borja from their official positions within the Department of Corrections Guam as their actions show depraved indifference and criminal negligence. These people in positions of power went to the length of arbitrating a scheme to stop me from seeking religious accommodation by physically putting my life in jeopardy within the confines of prison.

For damages I'm requesting the Department of Corrections Guam as an official Government of Guam agency compensate me a sum of $300,000.00 for forcing me to pick and choose religious practices,  for years of denial and rthe physical and emotional damage these actions have caused me.

1) For constantly having to battle to have a decent place to pray as opposed to being ordered to pray in a communal bathroom while others are showing or in my cell next to my commode.
2) For never providing spiritual or religious services for Muslims
3) For never providing holiday activities or holiday meals or gift donations for Muslim celebrations. The only holiday meals and donations available at the department of corrections Guam are during Easter and Christmas / Thanksgiving.
4) For preventing me from practicing my religious activity such as the braiding of hair
5) For placing a substantial burden upon me during every religious accommodation request including:
   a) Request for a kufi or head covering
   b) Request for religious pendant
   c) Request for religious mat
   d) Request for prayer oil
6) For requiring that I prove I'm muslim and requiring that I provide documentation while not requiring the Christians and Catholic submit to a prove your belief test.
7) For denying my rights to religious accommodation over a 10 year period.

For Compensatory damages I'm requesting $10,000 from the following defendants in their individual capacity

- Samantha Brennan
- Allen Borja
- Antone Aguon
- Mae Quitugua
- Cathy Cruz

For Punitive damages I'm request $10,000 from the following defendants in their individual capacity

- Samantha Brennan
- Allen Borja
- Antone Aguon
- Mae Quitugua
- Cathy Cruz

For Compensatory damages I'm requesting $5,000 from the following defendant in her individual capacity

\-     Marceline Maratita

For Punitive damages I'm requesting $5000 from the following defendant in her individual capacity

\-     Marceline Maratita

I am requesting a jury criminal trial on all triable issues.

I am requesting recovery of any costs involved in this suit.

I am requesting the assistance of a lawyer to help me properly represent myself in this suit.

I am requesting any additional relief this court believes is just, proper, and equitable.

---

**V.      Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**A.      For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: _____

Signature of Plaintiff _____

Printed Name of Plaintiff _____

**B.      For Attorneys**

Date of signing: _____

Signature of Attorney _____

21

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**A.   For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:   _Sept 27, 2019_

Signature of Plaintiff   _____

Printed Name of Plaintiff   _Dominick Lamor Felder_

**B.   For Attorneys**

Date of signing:   _____

Signature of Attorney   _____

Printed Name of Attorney   _____

Bar Number   _____

Name of Law Firm   _____

Street Address   _____

State and Zip Code   _____

Telephone Number   _____

E-mail Address   _____

# Attachment A(1)

Attachment A - Guidance Muslim Hair

What are Hadiths

a collection of traditions containing sayings of the prophet Muhammad which, with accounts of his daily

| Printed Name of Attorney | _____ |
| Bar Number | _____ |
| Name of Law Firm | _____ |
| Street Address | _____ |
| State and Zip Code | _____ |
| Telephone Number | _____ |
| E-mail Address | _____ |

# Attachment A(1)

Attachment A - Guidance Muslim Hair

What are Hadiths

a collection of traditions containing sayings of the prophet Muhammad which, with accounts of his daily practice (the Sunna), constitute the major source of guidance for Muslims apart from the Koran.

Religious Practice Documentation

Al-Bukhaari (3551) and Muslim (2337) narrated that al-Bara' said: The Messenger of Allah (blessings and peace of Allah be upon him) was a man of medium height, broad shouldered with thick hair hanging down to his earlobes.

Abu Dawood (4187) narrated that 'Aa'ishah said: The hair of the Messenger of Allah (blessings and peace of Allah be upon him) came between his earlobes and his shoulders.

What the hadith indicates is that the hair of the Prophet (blessings and peace of Allah be upon him) was almost shoulder length in most cases, and that sometimes it might become so long that he would braid it. This is to be understood as referring to situations in which a long time passed during which he paid little attention to his hair, such as when he was very busy or travelling and the like.

Zaad al-Ma'aad (1/170)

When his hair grew long because of travel or other reasons, the Prophet (blessings and peace of Allah be upon him) would put it into four braids, which was in accordance with the custom of the Arabs. So he would put his hair back, then make it into strands and twist them together, then they would become four braids.

Another narration in the collection of al-Bukhari occurs in a chapter specifically entitled "Braids". It recounts the narration of Ibn 'Abbas; in his childhood, the Prophet (peace be upon him) once moved him during prayer by pulling at the two braids in his hair. Ibn Hajr comments that, "in this act, there is indeed a tacit approval by

the Prophet's (peace be upon him) for the making of braids." Ibn Abbas was a young boy, and not in a state of travel at the time. [Ibn Hajr, Fath al-Bari]

Honoring the Hair Is From The Sunnah

By Ummu Maahir
Grooming the Hair According to the Sunnah of the Messenger of Allah
Sallallahu 'Alaihi wa Sallem)

Grooming the hair in Islaam is obedience to Allaah, the One free from all imperfections and the Most High and His Messenger (Sallallaahu 'Alaihi wa Sallem). The Prophet (Sallallaahu 'Alaihi wa Sallem) taught his companions (Radiyallaahu 'Anhum) to keep the hair clean and well-groomed. 'Ata ibn Yasar (Radiyallaahu 'Anhu) narrated:

"A man came to the Prophet with unkempt hair and an untidy beard. The Prophet pointed to him, as if ordering him to straighten his hair and beard. He did so and returned. Thereupon the Prophet observed, 'Is that not better than one of you coming with his hair unkempt, as if he were a devil?'" (Related by Malik)

2. The Prophet (Sallallaahu 'Alaihi wa Sallem) equated grooming the hair with honoring it. Abu Hurairah (Radiyallaahu 'Anhu) reported the Prophet, (Sallallaahu 'Alaihi wa Sallem), as saying,
"Whoever has hair should honor it." (Related by Abu Dawood.)
And:

Abu Qatadah (Radiyallaahu 'Anhu) related that he had a great amount of hair. He asked the Prophet, "O Messenger of Allaah, I have lots of hair. Should I comb it?" He answered, "Yes ... and honor it." Abu Qatadah used to oil it twice a day due to the Prophet's words, "... and honor it."

3. It is from the Sunnah to comb the hair every other day.

While ordering his companions to honor their hair, the Prophet (Sallallaahu 'Alaihi wa Sallem) forbade them to comb the hair daily. Narrated Abdullaah ibn Mughaffal:

"The Apostle of Allah (Sallallaahu 'Alaihi wa Sallem) forbade combing the hair except every second day."
(Abu Dawood: Book 33, Number 41)


Adoration / Importance of the Prophet's hair as a blessing

The Prophetic Command to Collect and Distribute the Blessed Hairs

According to the most authentic sources of the hadiths, the Companions would rush and vie to obtain the hairs cut from the head of the Messenger of Allah [Allah's peace and blessings be upon him].

Anas ibn Malik [Allah be pleased with him] narrates that, "I saw the Messenger of Allah [Allah's peace and blessings be upon him] while the barber was shaving his head [after the Farewell Hajj], and his Companions were circling around him, ensuring that a single hair would not fall except into the hands of one of them."
[Sahih Muslim]

Other versions in Muslim show that it was the Prophet himself [Allah's peace and blessings be upon him] who

23

ensured his hairs were distributed to his
Companions when "he said to the barber, 'Here,' and pointed with his hand to the right side of his head in this way, and then gave the hairs to those around him… then he gestured the barber towards the left side, and [when it was shaved] he gave [those hairs] to Umm Sulaym [Anas's mother]…" while another narration says, "he distributed one or two hairs to each person," and that he gave a significant portion to Abu Talha, and explicitly commanded him to "divide it between the people".

This clearly shows that it was not just the desire of the Companions, but the imperative of the Prophet [Allah's peace and blessings be upon him] himself to distribute his hairs during his Farewell

# Attachment A(2)

MIME-Version: 1.0
Date: Wed, 10 Apr 2019 08:04:17 +1000
Message-ID: <CAE=egiz3ehiOYqYAk6GvzV3cxupoZKP8KaAx5nMJH7fEQwTj9A@mail.gmail.com>
Subject: Re: Muslim Guidance
From: Andrea Felder <felderfamily07@gmail.com>
To: Mark Perez <mark.perez@doc.guam.gov>
Content-Type: multipart/mixed; boundary="00000000000066efcf05862022a7"

--00000000000066efcf05862022a7
Content-Type: multipart/alternative; boundary="00000000000066efcb05862022a5"

--00000000000066efcb05862022a5
Content-Type: text/plain; charset="UTF-8"

Good Morning - I'm attaching a document which provides guidance and
resources for Muslim Religious practices with regard to braiding of hair.

Thank you,
Andrea Felder

--00000000000066efcb05862022a5
Content-Type: text/html; charset="UTF-8"
Content-Transfer-Encoding: quoted-printable

<div dir=3D"ltr">Good Morning - I&#39;m attaching a document which provides=
 guidance and resources for Muslim Religious practices with regard to braid=
ing of hair.=C2=A0<br><br>Thank you,<div>Andrea Felder=C2=A0</div></div>

--00000000000066efcb05862022a5--
--00000000000066efcf05862022a7
Content-Type: application/pdf; name="Guidance Muslim Hair.pdf"
Content-Disposition: attachment; filename="Guidance Muslim Hair.pdf"
Content-Transfer-Encoding: base64
X-Attachment-Id: f_juac0w8j0
Content-ID: <f_juac0w8j0>


--00000000000066efcf05862022a7--

25

## Re: Muslim Guidance

 



**Andrea Felder** <felderfamily07@gmail.com>
to Mark

Wed, Apr 10, 8:04 AM  ☆  ↩

Good Morning - I'm attaching a document which provides guidance and resources for Muslim Religious practices with regard to braiding of hair.

Thank you,
Andrea Felder

---

Guidance Muslim Hair

 Guidance Muslim ...

↩ **Reply**     ➡ **Forward**

# Attachment B

Inmate copy

RECEIVED

**Department of Corrections**
Government of Guam.
Mangilao, Guam

(Attachmen B)   3S document
obtooing
Legal document

**INMATE REQUEST FORM**

To: Major A. Aguon  CFAS  Security Administrator.
(Print Name & Rank of Officer/Staff Member)

From: Felder Dominick L.                     Unit / Post:  17

---

**PART A - INMATE'S REQUEST**

Sir, I am requesting relief from a stoppage of religious practice that I have been in observance for the past 11yrs of my institutionalization. I also feel that the individuals whom are employees of this department of corrections have violated my 1st Amendment, 14th Amendment also the Religious Freedom Restoration Act of 1993 and the Religious Land Use and Institutionalize persons Act of the 2000 (s). Sir the attached document will give you history and the relief that I am seeking by your office. Thank you for your time.

Of_____  4.15.2019
Inmate Signature and Date

---

**PART B - RESPONSE**

Note: Response should be within 10 days from receipt.

Signature of Respondent (Print Name, Rank, and Date)

------------------------------(CUT ON THIS LINE)------------------------------

**PART C - INMATE'S RECEIPT**

Return to _____
_____, Housing Unit
_____I acknowledge receipt of a request regarding:
above named inmate. Request is dated _____ for the

Signature of Respondent (Print Name, Rank, and Date)

Sir, my imprisonment started in 2008, and I am a Muslim. For 11yrs I've obeyed and observed the Hadiths and Qur'an and all the prophets and their teachings. I've been growing my hair and beard and braiding my hair as is stipulated in the Hadith: Bukhari; titled: Braids. For the 11yrs on visitation my wife has tied down my hair in this fashion of my faith. It is my strong belief that following the Prophet Muhammad (PBUH)

Sir, Hadith are the writing of practices and sayings which elaborate, explain and historical traced back to the prophet.

On 4.4.2019, I was ordered to stop my hair from being braid, with no clearification on why and no write up or adverse action served upon me explaining why. Now for the length of time that I have been observing my religious belief and practice, no security issue has ever arised, nor was their a security issue on 4.4.2019. Sir, I have proven that I am a devotee Muslim and I've only the desire to follow my practices and beliefs. But this denial of my continuel practice is not justified and violates my Free Exercise Clause and Freedom of Religious observance and the Protection under the →

# Attachment C

28



GOVERNMENT OF GUAM
# DEPARTMENT OF CORRECTIONS
*DIPÅTTAMENTON MANGNGURIHI*
MANGILAO, GUAM 96913

May 23, 2019

MEMORANDUM

To:        Inmate Dominic L. Felder (#2922)

From:      M. M. Quitugua, Major, Commander Support Section

Subject:   Administrative Remedies Dated 05-07, 05-12; 05-13, and 05-22-2019

Reference: Religious Right to Braid Hair

I acknowledge receipt of your Administrative Remedies of:

May 07, 2019 – Request to address Memorandum dated April 23, 2019 to Maj A. F. Agoun; refer to Memorandum dated April 23, 2019
May 12, 2019 - Religious right to braid hair during Visitation by Spouse; Responded to by Maj A. F. Agoun via Memorandum Dated April 23, 2019.
May 13, 2019 – Seeking relief via access to speak to Maj Agoun; no change to respond made on Memorandum dated April 23, 2019 on same issue.
May 22, 2019- Administrative Remedy to Director of Corrections, see below.

Clearly your Administrative request have been addressed by memorandum dated April 23, 2019.

The points on this matter as you have indicated:

1. The religious right to braid your hair is not being denied as you can braid your hair at the housing unit to comply with grooming standards. It is not proper for your wife to braid your hair during your visitation as it hinders other visitors right to be in a properly clean and sanitized area and not subjected to seeing your wife braid your hair.

2. While you have the right to religious practices you also have the responsibility to respect the rights of others, to include other visitors during their visitation schedule.

Submitted for your information and compliance.

MAE M. QUITUGUA
Major

MP.
6/11/19
0802 WPS,

# Department of Corrections
## Government of Guam
## Mangilao, Guam

### INMATE REMEDY REQUEST FORM

TO: __Major A.F. Aguon    Operations Commander__
(Print Name & Rank of Officer/Staff Member)

FROM: __Felder Dominick L.__                    UNIT/POST: __17__

**PART A - INMATE'S REQUEST**

I submitted two grievances on May 23, 2019, June 10, 2019 has past and Ive had no response from the grievance complaint, Can you follow up on my grievance complaint. I am requesting relief for the allowance of the braiding of my hair, that I am not being afforded the way, by means that my wife be allowed to braid my hair at least twice amonth. As the previous memorandum allows me to have braids, but does not provide away for me to follow my religion and has, is preventing me from doing so thru allowance. Can you help me with a solution.

~~Df~~    9.11.2019

Inmate Signature and date

**PART B – RESPONSE**

NOTE: Response should be within 10 days from receipt.

_____
Signature of Respondent (print name, rank, and date)

--------------------------------------------------(CUT ON THIS LINE)--------------------------------------------------

**PART C – INMATE'S RECEIPT**

Return to _____, Housing Unit _____

I acknowledge receipt of a request regarding: _____ for the

Above named inmate.  Request is dated _____.

_____
Signature of Respondent (print name, rank, and date)



GOVERNMENT OF GUAM
## DEPARTMENT OF CORRECTIONS
*DIPÅTTAMENTON MANGNGURIHI*
MANGILAO, GUAM 96913

April 23, 2019

MEMORANDUM

To:        Inmate Dominick Lamar Felder (#2922)    *Post #17*

From:      Major A.F. Aguon
           Operations Commander

Subject:   Request for religious accommodation
           Reference: hair length and braid

This memorandum is provided to ensure your request for religious accommodation reference to hair length and braids are in compliance with standard departmental interests in regards to grooming.

Effective immediately you may continue to grow your, up to four inches thick from the scalp and will be allowed to braid your hair in two single line rows. As always, your hair and braids will be subject to search (visual and physical) for contraband.

You are advised that visitation is a time of visit and not grooming, therefore the restriction of braiding your hair during visitation will continue to be enforced. All prisoners are advised to be properly dressed and groomed prior to visitation.

If you have any questions, you can submit a remedy request to the Operations Commander Office.

Major A.F. Aguon
Operations Commander

Concurred:

Major M.M. Quitugua                          Col. A.P. Borja
Support Section Commander                    Warden





**Department of Corrections**
Government of Guam
Mangilao, Guam

INmate Copy

__INMATE REMEDY REQUEST FORM__

TO: Operation Commander Major A. F Aguon
(Print Name & Rank of Officer/Staff Member)

FROM: Felder Dominick _____ UNIT/POST: 17

PART A - INMATE'S REQUEST

Sir, I am attempting to seek relief and to follow Article 16 Administrative Remedy and complaint policy. I am being denied access to your office as per Memorandum April 23, 2019 with respect the attached document states my complaint and violation.

S. 13. 2019

Inmate Signature and date

PART B – RESPONSE

NOTE: Response should be within 10 days from receipt.

gnature of Respondent (print name, rank, and date)

------------------------------------------(CUT ON THIS LINE)------------------------------------------

PART C – INMATE'S RECEIPT

turn to _____
_____, Housing Unit _____
cknowledge receipt of a request regarding: _____
ove named inmate. Request is dated _____ for the

nature of Respondent (print name, rank, and date)

Major A F Aquon                    5·13·2019

Sir, on Sunday 12, 2019, I submitted a Admini
strative Remedy to the Operations Commander
concerning violations of my constitutional
rights, and violations of my religious protection
and my attempt to seek relief through due
process action of law as far as Article 16
of the Executive Order 94-19. CO1 Fransisco
denied me turning my administrative remedy
into the operations commanders office.

My remedy is addressed to the operations
commander, I have for the past 30 plus
days I've proceeded with procedural due
process and have sought your office. I
sealed the Administrative Remedy by
stapling it so that the contents within
will be viewed by you only, and if you
by your authority wish to include CO1
Fransisco into a discussion, then that is
your descion to make. Sir, my attempt to
reach you about a religious and sensitive
matter is denied me, unless as CO1 Frans
isco tells me that my documents address
to other departments is to be censored.

This is a henderance, that I can not be
safe in addressing concerns of a sensitive
nature. Sir, it is already proven through
previous attempts that a CO1 has no

authority or the knowledge to solve the Administrative Remedy that I am trying to turn in. Plus, my direct attempt to reach you is a violation of due process.

Once, he denied to take the Administrative Remedy, I filled out a grievance form an submitted it, two copies one for myself and one for submission with a remedy.

I was called to the control by co 1 Fransisco and he informed me that he will not accept my grievance form and refused to sign it or return my copy signed.

Sir as Per Ex Order 94-19 Article 16 Grievance complaints, by statue I have the write to submit a grievance whenever I experience a grievance., by denying the grievance I submitted again my due process is being denied me. I've followed the process of the Ex Order 94·19 Article 16, Sir if I am to follow the rules of procedure, why am I being directed not too? I still need to turn my remedy

Why am I being directed against what the Ex Order says. Am I not to adhere to it? Awaiting guidance

Prisoner Dominick Lamor Felder #2922



*Inmate copy*

GOVERNMENT OF GUAM
# DEPARTMENT OF CORRECTIONS
*DIPÅTTAMENTON MANGNGURIHI*
MANGILAO, GUAM 96913

May 23, 2019

MEMORANDUM

To:          Inmate Dominic L. Felder (#2922)

From:        M. M. Quitugua, Major, Commander Support Section

Subject:     Administrative Remedies Dated 05-07, 05-12; 05-13, and 05-22-2019

Reference:   Religious Right to Braid Hair

I acknowledge receipt of your Administrative Remedies of:

> May 07, 2019 – Request to address Memorandum dated April 23, 2019 to Maj A. F. Agoun; refer to Memorandum dated April 23, 2019
> May 12, 2019 - Religious right to braid hair during Visitation by Spouse; Responded to by Maj A. F. Agoun via Memorandum Dated April 23, 2019.
> May 13, 2019 – Seeking relief via access to speak to Maj Agoun; no change to respond made on Memorandum dated April 23, 2019 on same issue.
> May 22, 2019- Administrative Remedy to Director of Corrections, see below.

Clearly your Administrative request have been addressed by memorandum dated April 23, 2019.

The points on this matter as you have indicated:

1. The religious right to braid your hair is not being denied as you can braid your hair at the housing unit to comply with grooming standards. It is not proper for your wife to braid your hair during your visitation as it hinders other visitors right to be in a properly clean and sanitized area and not subjected to seeing your wife braid your hair.

2. While you have the right to religious practices you also have the responsibility to respect the rights of others, to include other visitors during their visitation schedule.

Submitted for your information and compliance.

M. M. QUITUGUA
Major

**Department of Corrections**
Government of Guam
Mangilao, Guam

**INMATE REQUEST FORM**

To: Major A. F. Aguon Operation Commander
(Print Name & Rank of Officer/Staff Member)

From: Felder Dominick 2922                    Unit / Post: 17

---

**PART A - INMATE'S REQUEST**

Sir, this is my Second remedy addressed to you, that concerns Memorandum April 23, 2019 Religious Accommodation: hair. Sir, as per the memo, the Department has effectively stopped me from continueing my religious observance. I do not know how to braid my own hair and have stated this to Mr. Perez. And I was told that, their will be a way that my wife can still do this. By not being provided any means in which to continue, my practice, but being allowed to do so, I am still being Substantially burdened, I've provided my own means and this department is interfering with that means. I am requesting the interference to stop and that my wife can continue to help me. If this is denied me, I am requesting for other options, as it is my right to worship.

5.7.2019
_____
Inmate Signature and Date

Respectfully.

---

**PART B - RESPONSE**

Note: Response should be within 10 days from receipt.

_____
Signature of Respondent (Print Name, Rank, and Date)

------------------------------(CUT ON THIS LINE)------------------------------

**PART C - INMATE'S RECEIPT**

Return to _____, Housing Unit
_____ I acknowledge receipt of a request regarding:
above named inmate. Request is dated _____ for the

_____
Signature of Respondent (Print Name, Rank, and Date)

MR.
0603, WS.
5/15/19

DC 03.19

**Department of Corrections**
Government of Guam
Mangilao, Guam

**INMATE REMEDY REQUEST FORM**

TO: _Operations Commander Major A F Aguon_
(Print Name & Rank of Officer/Staff Member)

FROM: _Felder Dominick L._ UNIT/POST: _17_

**PART A - INMATE'S REQUEST**

Sir, I am requesting to speak with you about the April 23, 2019 Memorandum. I have questions about the religious accommodation. I am submiting a remedy to the Operations commanders' office.

Sir, I've also submitted a request on the 30th of April 2019,

Sir, I am seeking relief and have attached documents concern the relief requested.

_5·12·2019_
Inmate Signature and date

**PART B – RESPONSE**

NOTE: Response should be within 10 days from receipt.

gnature of Respondent (print name, rank, and date)
--------------------------------------------------(CUT ON THIS LINE)----------------------------------------------------
**PART C – INMATE'S RECEIPT**

:turn to _____

_____, Housing Unit _____

cknowledge receipt of a request regarding: _____

ove named inmate. Request is dated _____. _____ for the

nature of Respondent (print name, rank, and date)

Sir, on April 4.4.2019,

While on visitation, my wife was crying so I held her.
That day, their was an officer on the floor whom
witness this and I explained my actions. Again their
is speculation that I am some how rubbing my head
against my wifes body to experience some gradification.
Sir, I know that this tape, excuse me, this video
recording shows whatever the lies that seems to
prevail but their was a employee of the department
of corrections their present and observed what went on.
Was he not questioned, and why was I not
questioned or written up? or asked about my
actions which I understand now that is being used
against me and my religious practices.
Sir, I've written in good faith and have been
seeking closures to lift this substantial burden.
But nothing that has been given me does that and
the answers to my remedies shows that I have
not broken any laws or rules of this agency.
Sir, I am reporting a violation of my
constitutional rights, I am also reporting that
certain memembers of staff are abusing the
Ex order 94-19 and breaking local and federal
mandates and statues that this Department of
Corrections ad here too.

Sir, I am bring this to your attention

because the Mandela Rules, the Constition, local statue and Federal mandate are clear, Visitation, my right to religious affiliation, freedom to practice and protections of and against governmental and prisons intrusiveness in violating the practive mandates and laws is prohibited.

I've verbally and through administrative remedy request sought to end the substantail burden.

I've been warned that I am writing to much, I have been warned that I am impatient because I expect results on illegal activity. I've written to explain and provide documentation and written to the Warden for relief and options.

Sir, their is no other issue, employee of this department in their official capacity have violated Public law 106-274 which covers local and Federal statues. I does not matter if they were ignorant. I myself advised them, each time because this is not the first, time...

Sir, thank you for your wisdom on and in the April 23, 2019 memorandum. But as line 3 states that at visitation I can not continue the practice of 11 years. So, I have been Effectively cut off.

I have no other means than my wife and this (those) employee of the Department of Correction are depriving me of my continuing practice.

Sir, Ex Order 94-19 has no religious grooming standard. It is only the Ex Order 94-19 Artical 10

Personal Hygiene  Ex Order 94-19

Articel 10

10101 - Inmates Responsibility for Personal Hygiene - Inmates shall Keep themselves clean and practice those health habits essential to the maintenance of physical and mental well-being.

10104. Hair Care (a) Male inmate may have their hair cut as often as is practicable or necessary and/or where directed by the Director. Hair shall be worn in a neat manner, and be clean and well groomed. (If facial appearance is substantially changed, new pictures shall be required.

(c) Hair and whisker styling shall follow facility policies. Artificial hair pieces shall not be permitted. Each inmate shall be responsible for his or her hair.

10. Personal Hygiene (10.4 - 10.5) Ex Order 94-19

Sir, A document in my possession claims that I present a Hygiene and Health issue, that practicing my religion durning visitation with my family brings up this concern. Is this true and can it be medically proven. For 11 years, I nor my wife or children have become sick. For the past 4 years I've spent majority of my imprisonment with the same inmates and family members because of my inmate statues and not one noted, logged in or Medical out break was reported due to my Hygiene as this document I received stated.

Sir, Incoming records will show that I purchase all of my hygiene products, specially prescribed to take care of, if any hygiene issue, which I've never had, that causes some else to cought or be come ill by.

Sir I do not understand that / this line of thaght, other than to prohibit my be a fictional reason. Can this hygiene issue be proven?

Sir, I goute Article 9 - Visit 1901 - General Provisions. While visiting is a privilege, inmates are encouraged to maintain close contact with family members and those who can assist in the rehabilitation process.

Sir, my practices is part of my rehabilitation.

Sir Article 3 - Rules and Discipline,
1302 - Inmates Rights and Responsibilities
(E) You have the Right to reasonable visits...
(c) You have the Right to freedom of Religious
affiliation and voluntary religious worship.
  Sir, I qoute Article 2 Civil Rights of Inmates
1201 Civil Rights Acts. The Civil Rights Act of 1871 (42
USC. section 1983) Prohibits a person acting under
color of law (e.g. a Corrections Officer), from
depriving any other person (such as an inmate) of
rights under the United States Constitution or federal
laws....
   Sir under this provision of statue law and under
Public law 106 - 274 Religious land Use and
Institutionalized Persons Act 2000
  I maintain that I am be blocked from my
religious practice as a institutionalized person.
   Sir, I am requesting that my wife be allowed
by whatever options are available to help me in
my religious practices and observances. I request
that you allow my wife to braid my hair durning
one of my visitation periods per week or
by weekly, I am requesting that and since
this Department of Corrections caused the
denial of this practice, that this department
shall also provide a means to help me
re-establish it.

✗ Sir, I am respectfully requesting it in writing your approval or disapproval in a timely manner so that I will know that my efforts are not being hendered.

✗ Sir, I am also requesting that as Commander of Operations, if this requests can not be met by your office, that I will receive this documents back, so that I may address the next level in command.

Sir along with this remedy, I've list events and the sequences that have followed. I've provide information and have documentation to support my claims. Respectfully I am requesting a resolution, and not further henderances.

Sir, their is a difference between following the rules and breaking laws. Sir, this is not about visitation. This about my religious practice that I've followed thru. out my imprisonment, and was the only means of accomplishing it, and the actions of employees to violate my right to do this, and leaving me no other options to accomplish this. Which puts the burden upon me. It has been longer than a month. My spiritual walk is being denied. Sir, can my request as listed in this document be granted.

Dominick Lamar Felder 2922 Prisoner

Public Law 106-274 - Religious Land Use and
Institutionalized Persons Act of 2000-
a) Sec 2. Protection of Land use as Religious
Exercise.
1.) General Rule - No government shall impose or
implement a land use regulation in a manner that
imposes a substantial burden on the religious
exercise of a person, including a religious assembly
or institution, unless the government demonstrates
that imposition of the burden on that person,
assembly or institution -
 A.) is in furtherance of a compelling government
al intrest; and

 B.) is the least restrictive means of furthering
that compelling government intrest.

42 USC 2000cc-1 Sec (3) Protection of Religious
Exercise of Institutionalized Persons.

✱ (a) General Rule - No government shall impose
a substantial burden on the religious exercise
of a person residing in or confined to an
institution, as defined in section 2 of the
Civil Rights of Institutionalized Persons Act
(42 USC 1997), even if the burden results from
a rule of general applicability, unless the
government demonstrates that imposition

of the burden on that person —

✗ (1) is in furtherance of a compelling
governmental intrest;
                                              and

✗ (2) is the least restrictive means of
furthering that compelling governmental
~~hatom~~ interest.

Sir as this law stands, my observance of my
religion and practice has not in the past 11yrs
nor in the foreseeable future caused a burder
or safety and security problem to this
facility. Sir I understand that the concern
maybe the attention of other visitors and
that every has the right to visit. But my
question is

1.) Their is no safety and security issue: my wife
only brings her money and a prison id issue to
her at VPC.

2.) That the concerns of other familys may seen
valid on the first glance but a closer look at
the idea, shows that for years I and my
family have been with the same people on
visitation for several years. Their has not
been complaints from other family members.
Plus the time that I observe my belief is

When the least amount of visitors are their and for 30 minutes or less, this observance and practice is started and completed. Sir this concern on it's face may seem not legit by those whom brings it up on the behalf of no existent individuals, an no existent complaints the third point I have to bring up is the discriminatory part of this situtation.

3. This denial of my practice is discrimination because officers are not stopping families from praying with each other durning visitation. Officers don't stop inmates from wearing there Rosary's or crucifix's to show openly whom they are and the God that thay serve. Denying me the freedom to express or practice or observe my religion while on visitation is not against any rule and fred-om of observence is protected by the law which every Department of Correction is held to. Even more so Sir, that if it is proven that a Employee of the Department of Correction is openly showing bias, or, an, discrimination they are violating not only local law but also several Federal Laws. As, I have observed Sir, that no-one has restricted any other religious belief or expression or practice of any other faith being observed durning

Visitation. As minimal as these are, I should not be denied, also with my wife, and children.

4.) Sir, at large this Department has forced me to provide documentation for everything dealing with my religion and I have provided. I have been left to financially provide for every aspect of my religious observance, is the Department now placing me in a position that I must pay for a barber or cosmetician whom is license to do hair to come into the Department so that I can be allowed to continue my observance? Sir, this Department of Corrections has never had, or employed a license person to take care of hair care. But if this is the case can I have permission to bring someone in to help me attend to my religious practice?

Sec 2. Protection of Land Use as Religious Exercise (2) Scope of Application (d)(1) - Discrimination and Exclusion - (1) Equal Terms - No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a non religious assembly or institution.

(2) Nondiscrimination - No government shall

impose or implement a land use regulation
that discriminates against any assembly or
institution on the basis of religion or
religious denomination.
   (3) Exclusion and Limits - No government
shall impose or implement a land use
regulation that —

(B) unreasonably limits religious assemb
lies, institutions, or structures within a
Jurisdiction.

   Sir, I am explaining these laws and asking
relief through this medium because you are
the Safety Administrator. I've broken no rul
and by the Executive Order and by Federal
laws, I have not broken any laws. By loca
statues I am in compliance. And I ask for
relief under this Federal Law which applies
to this Department of Corrections because it
receives Federal Funding and is governed by
local and Federal Law.

42 USC 2000 cc 3
Sec 5 Rules of Construction.

(a) Religious Belief Unaffected — Nothing in
this Act shall be construed to authorize any

government to burden any religious belief.

(c) Claims to Funding Unaffected - Nothing in this Act shall create or preclude a right of any religious organization to receive funding or other assistance from a government, or of any person to receive government funding for a religious activity, but this Act may require a government to ~~incur~~ incur expenses in its own operations to avoid imposing a substantial burden on religious exercise.

(e) Government Discretion In Alleviating Burdens on Religious Exercise - A government may avoid the preemptive force of any provision of this Act by changing the policy or practice that results in a substantial burden on religious exercise, by retaining the policy or practice and exempting the substantially burdened religious exercise, by providing exemptions from the policy or practice for applications that substantially burden religious exercise, or by any other means that eliminates the substantial burden.

Sir, I am only qouting law that will help alleviate the substantial burden that denying any part of my religious exercise, that is in

reason, by the law says that I do not have to pick and choose. I've been observing and practicing my faith for over a decade, you can see the substantial burden this Department is placing upon me to stop and by force of retaliation by terminating my Visitation or a write up with a violation that does not exist, and the possible implementation of a rule that has no equivocal standard other than to discriminate and support and ideal, that Visitation should not be a rehabilitative. which I understand security and safety.

1.)  But I did not violate a rule.

2.)  I've always observed my practice an belief.

3.)  I've always accepted disciplinary correction

4.  Am I violating policy?

5.  Have my religious rights been substantially burden, activity and practices according to this law?

I ask for relief so that I may continue the beliefs of the Hadith, that my wife be able and allow to continue to help me, and that if

My wife is not allowed to help me, I am requesting the Department of Correction provide a proffessional license individual to assist me, or that I may seek assistance publicly to pay said individual and individual be allowed to enter the Department of Correction on occasion to assist me.

Sir, I am humbly requesting the least restrictive means available, by law.

Thank you, your response is appreciated

Respectfully
D. L. Felder

4·15·2019